In re James Ronald TENNYSON and
Doris Jean Tennyson, Debtors.

Doris Jean Tennyson and James
Ronald Tennyson,
Plaintiffs,

v.

Challenge Realty, Defendant.

Bankruptcy No. 00–32513.
Adversary No. 03–3131.

United States Bankruptcy Court,
W.D. Kentucky.

June 7, 2004.

Jan C. Morris, Lowen & Morris, Louisville, KY, for Debtors and Plaintiffs.

Ellen G. Friedman, Louisville, KY, for Plaintiffs.

Cynthia M. Roselle, James D. Keffer, Cincinnati, OH, for Defendant.

## MEMORANDUM OPINION

DAVID T. STOSBERG, Chief Judge.

This matter comes before the court on the Challenge Realty's ("Challenge") Motion to Dismiss Adversary Case. The plaintiffs initiated this adversary on September 20, 2003. In the complaint, the plaintiffs contend that due to violations of the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act of 1994 ("HOEPA") they are entitled to a judgment declaring the mortgage between these parties void and unenforceable.

They also seek damages, costs and attorneys fees as provided by both TILA and HOEPA. The second count of the two count complaint is entitled "Unconscionability" and alleges that due to the high interest rate, excessive fees, and a failure to provide proper notices, the plaintiffs are entitled to have the transaction rescinded. Plaintiffs seek to void the mortgage, discharge any tender obligation under TILA, recover $2,000 in damages, and enhanced damages and attorney fees pursuant to 15 U.S.C. § 1640(a)(4).

On October 21, 2003, Challenge filed this Motion to Dismiss. The motion asserted two grounds for dismissal of the complaint: Challenge argued the complaint should be dismissed as the plaintiffs lacked standing and that the action for damages was barred by the statute of limitations. In the Memorandum accompanying the motion to dismiss, Challenge points out that plaintiffs' original bankruptcy schedules listed no claims, counterclaims, or rights of setoff against Challenge, or its predecessor on the mortgage, Empire Funding. An amendment to the schedules was filed but the amendment was limited to a "Truth in Lending Claim" of $2,000 in Schedule B. In addition to adding three new unsecured creditors, the amendment also provided that "Empire Funding should be listed as an unsecured creditor on Schedule F (not Schedule D) Mortgage is Void (Rscinded (sic) per TIL (sic))." Finally, the plaintiffs amended their Schedule C of Exemptions to include a "Truth in Lending Claim vs. Empire Funding Exempt per KRS 427.160." Plaintiffs did not list a claim for rescission in their bankruptcy schedules and did not serve Empire Funding with this amendment as required by Fed. R. Bank. P. 1009(a). Ironically, all of the other creditors affected by this amendment were served with the amendment, except Empire Funding or Challenge. On August 30, 2000, the plaintiffs received their Chapter 7 discharge. Two weeks later, on September 11, 2000, the Chapter 7 Trustee filed his Report of No Assets and the bankruptcy case was closed the next day. Under the aforesaid scenario, Challenge argues that the plaintiffs lacked standing to bring the claims asserted in the complaint. Only the Chapter 7 trustee has standing to request damages and to challenge the validity of the mortgage. With respect to the statute of limitations argument, Challenge argues that any request for damages under TILA is barred by the one year statute of limitations imposed by TILA. Here, since the loan originated in March, 1998, the statute of limitations for TILA allegations expired in March, 1999.

In the response to the motion to dismiss, the plaintiffs provided some procedural history between these parties that took place in state court before the filing of this adversary. One of the claims raised by Challenge in the state court foreclosure action was that the plaintiffs were judicially estopped from asserting TILA and HOEPA damages and rescission claims due to their failure to disclose same in their Chapter 7 bankruptcy schedules.

With respect to the standing argument, the plaintiffs assert they have standing to bring this action since the action was abandoned by the Chapter 7 Trustee. Citing §§ 350 and 554 of the Bankruptcy Code, the plaintiffs contend that because the real property was scheduled and not administered by the trustee at the time of the closing of the case, it was abandoned back to the plaintiffs. Plaintiffs point out that the real property that was the subject of the underlying mortgage was listed on Schedule A, which provided the trustee proper notice of the asset. Plaintiffs also address the rescission claim in their response. "However, at the time the bankruptcy case was closed, the property was

also encumbered by a first mortgage by Crown Bank securing a debt of $57,850. Because the home was valued at $48,000, the trustee would have had no interest in pursuing the rescission claim." This response assumes both that the valuations are accurate ( a fact disputed by Challenge) and that the trustee was aware of the rescission claim (which appears unlikely considering that the plaintiffs have never listed a rescission claim in their schedules).

Turning to the statute of limitations argument, plaintiffs concede in their Response to Motion to Dismiss that the statute of limitations has run on their statutory damages claim for the alleged failure to provide the required notices. Plaintiffs counter that the year statute of limitations does not bar a claim for damages resulting from the separate refusal to honor a rescission.

Challenge filed a Reply to Plaintiffs' Response to its Motion to Dismiss Adversary Case. Challenge correctly points out that the plaintiffs never added a rescission claim or unconscionability claim to their bankruptcy schedules. Further, to the extent it constitutes a separate claim, no HOEPA claim was listed either. Challenge cites several cases addressing the failure to properly schedule causes of action. Because these claims were not properly listed in the bankruptcy schedules, they do not qualify under the sections cited by the plaintiffs to be abandoned. As such, they remain part of the bankruptcy estate which may be administered only by the trustee. Further, the damages claim made in the complaint in this adversary greatly exceed the $2,000 statutory damage claim made in the schedule amendment filed by the plaintiffs. Challenge contends that had the plaintiffs listed all of their potential claims, the trustee may well have pursued them.

The court heard oral arguments on the motion to dismiss on January 20, 2004, and directed the parties to address the issue of judicial estoppel in post hearing briefs. Each party filed a post hearing memorandum addressing the judicial estoppel issue.

The court must address two separate issues in deciding whether to grant Challenge's motion to dismiss. First, the court must determine whether these claims were properly scheduled and abandoned by the Chapter 7 trustee upon the closing of the case. If not, then the claims remain property of the bankruptcy estate, thereby making the Chapter 7 trustee the party with standing to pursue these claims. Second, and somewhat related to the first issue, is whether the plaintiffs are barred by the doctrine of judicial estoppel from pursuing these claims. Like the first issue, this issue also turns on whether the debtors properly listed the claims in the bankruptcy schedules.

Section 554 of the Bankruptcy Code provides, in part:

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

The plaintiffs correctly cite *In re Hunter*, 76 B.R. 117 (Bankr.S.D.Ohio 1987), for the proposition that when property is properly scheduled by the debtor and information concerning the asset has been properly disclosed to the trustee, property vests back to the debtor if it is not administered and abandoned by the closing of the case. As can be seen by the quoted Code section and the principle of the *Hunter* case, the key to this issue lies in the disclosure of the asset on the schedules. A pre-petition asset which was not

properly disclosed in a debtor's schedules is not deemed abandoned and remains property of an estate. *See In re Arboleda,* 224 B.R. 640 (Bankr.N.D.Ill.1998); *In re Peebles,* 224 B.R. 519 (Bankr.D.Mass. 1998); *In re Winburn,* 167 B.R. 673 (Bankr.N.D.Fla.1993). In this case, there can be no dispute that plaintiff failed to schedule either a rescission claim or a failure to honor a valid rescission claim. While the plaintiffs did amend their schedules to include a $2,000 TILA claim, no mention is ever made of a possible mortgage rescission claim, a failure to honor a rescission claim, or a HOEPA violation. The plaintiffs would contend that the real property which is the underlying basis for the dispute between these parties was scheduled and that this was sufficient notice for the Chapter 7 trustee. This court cannot agree. The real property and the individual claims against the mortgagor are distinct, separate assets. One does not subsume the other. Box twenty (20) of Schedule B specifically asks for all contingent and unliquidated claims. Every debtor in bankruptcy has an absolute obligation to schedule every asset on their bankruptcy schedules. 11 U.S.C. § 521(1). The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court. Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co. et al.,* 81 F.3d 355, 362 (3d Cir.1996); *In re Hamilton,* 306 B.R. 575, 585 (Bankr. W.D.Ky.2004) ("Full disclosure is the cornerstone and capstone of any bankruptcy case and is necessary for the successful administration of a bankruptcy estate."). This includes claims the debtor may have against mortgage lenders.

■ Because these claims were not listed by the plaintiffs, the trustee could not evaluate the claims to determine if the claims should be pursued by the estate. Certainly setting aside a mortgage could result in non-exempt equity going to unsecured creditors. Likewise, pursuing a failure to honor a rescission claim could result in non-exempt funds being collected by the trustee to be distributed to the estate. These points emphasize the importance of listing all assets, including contingent claims, in the bankruptcy schedules. The plaintiffs' argument that there would be no equity in the property misses the point. Debtors may not selectively list assets solely on the basis of their perceived value. Debtors must list all assets and leave determinations as to value, equity, and possible benefit to the estate must be made to the trustee.

Because these claims were known to the plaintiffs at the time their bankruptcy petition was filed, and not listed in the bankruptcy schedules as required by § 521(1), they were not abandoned by the operation of § 554. Accordingly, the claims remain property of the bankruptcy estate and the Chapter 7 trustee is the party with proper standing to pursue any or all of these claims.

■ The court could grant the motion to dismiss on this ground alone. The court will, however, address the other argument for dismissal. Judicial estoppel was raised by Challenge in the state court foreclosure action and raised by this court at the oral arguments hearing. Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (internal citations and quotations omitted). The doctrine of judicial estoppel "prevent[s] a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *See Reynolds v. Commissioner,* 861

F.2d 469, 472 (6th Cir.1988). The doctrine of judicial estoppel is utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir.1990). Judicial estoppel may be used to bar would-be plaintiffs who failed to schedule causes of action in their prior bankruptcy cases. Honorable William Houston Brown, Lundy Carpenter, & Donna T. Snow, *Debtors' Counsel Beware: Use of the Doctrine of Judicial Estoppel In Nonbankruptcy Forums,* 75 Am. Bankr.L.J. 197, 228 (2001) (*citing, e.g., Jinright v. Paulk,* 758 So.2d 553 (Ala.2000)). While judicial estoppel may be used to preclude a debtor from asserting claims not scheduled, it should not be used in situations of inadvertence or mistake. *See, e.g., United States v. Hussein,* 178 F.3d 125, 130 (2d Cir.1999); *King v. Herbert J. Thomas Mem'l Hosp.,* 159 F.3d 192, 196–97 (4th Cir.1998); *Helfand v. Gerson,* 105 F.3d 530, 536 (9th Cir.1997). In *Browning v. Levy,* 283 F.3d 761(6th Cir.2002), the Sixth Circuit adopted the test used by the Fifth Circuit to determine if an omission was inadvertent. Under the Fifth Circuit test, as outlined in *In re Coastal Plains, Inc.,* 179 F.3d 197 (5th Cir.1999), there are two circumstances under which a debtor's failure to disclose a cause of action in a bankruptcy proceeding might be deemed inadvertent. One is where the debtor lacks knowledge of the factual basis of the undisclosed claims, and the other is where the debtor has no motive for concealment. *Id.* at 210 *and see De Leon v. Comcar Indus., Inc.,* 321 F.3d 1289 (11th Cir.2003) (debtors knew of claims and stood to benefit from their omission from the bankruptcy schedules). In the case *sub judice,* there can be no question that the plaintiffs were aware of these claims and the factual basis underlying the claims. Likewise, there can be no question that the plaintiffs did not list these claims on either their original bankruptcy schedules or their amended bankruptcy schedules. With respect to motive, the failure to list these rescission claims would result in any non-exempt equity in the real property going to the plaintiffs as opposed to the bankruptcy estate. Furthermore, any monetary damages from the various claims above the exemption level would go to the benefit of the plaintiffs and not their bankruptcy estate. Under the test adopted by Sixth Circuit in the *Browning* case, this court must conclude that the failure to list the claims was not inadvertent. Because the failure to list these claims was not inadvertent, the plaintiffs cannot now turnaround and pursue the very same claims.

To conclude, the court finds that at the time plaintiffs' filed this bankruptcy case, they possessed numerous claims against Empire Funding, the predecessor of Challenge Realty. These claims were not listed in the plaintiffs' original bankruptcy schedules. Only one claim, the $2,000 TILA claim (which plaintiffs now concede was time barred) was listed in the plaintiffs' amended schedules. At no point were the rescission or the failure to honor rescission claims scheduled by the plaintiffs. Because the claims were not properly scheduled, they were not abandoned by the Chapter 7 trustee and remain property of the bankruptcy estate. Consequently, the Chapter 7 trustee, and not the plaintiffs, is the party with standing to pursue these claims. Additionally, and alternatively, because the claims were not properly scheduled, and the failure was not inadvertent, the doctrine of judicial estoppel precludes the plaintiffs from going forward with these claims. The court now being otherwise sufficiently advised,

For the reasons set forth above, an order dismissing the plaintiffs complaint will be entered this same date.

## ORDER OF DISMISSAL

Pursuant to the court's Memorandum entered this same date and incorporated herein by reference, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that the plaintiffs' complaint be and is hereby **DISMISSED.**